# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOHNNY GURLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 3454 |
| | ) | |
| MICHAEL SHEAHAN, JOSEPH | ) | Judge Rebecca R. Pallmeyer |
| SHAUGHNESSY, SCOTT KURTOVICH, | ) | |
| and ARDELL HALL, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Johnny Gurley, currently incarcerated in federal prison, resided in the Cook County Jail from August 2005 through July 2006. He claims that the conditions of his confinement at the jail violated the United States Constitution. In this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, Plaintiff claims that Defendant jail officials violated his rights by providing him with inadequate bedding and sanitation; denying him needed recreation; failing to provide appropriate heating and cooling; denying appropriate medical care; and exposing him to excessive noise, pest infestation, and second-hand tobacco smoke. Defendants have moved for summary judgment. For the reasons stated in this order, the motion is granted in part and denied in part.

## FACTS

Defendants filed a statement of uncontested material facts pursuant to Local Rule 56.1. Together with their summary judgment motion, Defendants provided Plaintiff with the notice required under Local Rule 56.2, explaining the requirements of the Local Rules and warning Plaintiff that his failure to respond with appropriate evidentiary support could result in entry of judgment against him. (Notice to Pro Se Litigant, Attach. to Defs.' 56.1.) Despite the warning, Plaintiff has not submitted a statement of contested facts; instead, he simply elaborates on certain facts in his opposing brief. The court has discretion in deciding how strictly to enforce Rule 56.1. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). As Plaintiff is proceeding *pro se*, the court will consider the factual assertions he makes in his response brief

only to the extent that Plaintiff could properly testify about the matters asserted at trial, and that Defendants had a fair chance to respond to those facts. Accordingly, where Plaintiff merely provides additional details for claims he made in his Complaint, the court will consider those details; but the court will ignore arguments or theories in support of any new claims that were not presented in the Complaint or explored in discovery. The following facts are thus drawn principally from Defendants' Rule 56.1 statement.

Plaintiff was admitted to the Cook County Jail on March 22, 2005, but released the next day.[1] (Janus Aff. ¶¶ 4(a), (b), Ex. 2 to Defs.' 56.1.) Plaintiff remained free on electronic monitoring/day reporting from March 23, 2005, until August 27, 2005. (*Id.* ¶ 4(b).) On August 27, 2005, Plaintiff was readmitted to the jail and remained incarcerated there until July 27, 2006. (*Id.* ¶ 4(c).) For most or all of Plaintiff's time in the jail, he was awaiting trial and had not yet been convicted of any offense. Defendants are all various jail officials: Michael Sheahan, former Sheriff of Cook County[2]; Scott Kurtovich, acting executive director of the Cook County Jail at all times relevant to this action; Ardell Hall, Superintendent of the Jail's Division 5, where Plaintiff was housed; and Joseph Shaughnessy, former Inspector General of the Cook County Sheriff's Department.

---

[1] In his Complaint, Plaintiff claims that he entered the jail on May 22, 2005, but documentation provided by Stanley Janus, Superintendent of the Receiving, Classification, and Diagnostic Center at the Cook County Department of Corrections shows that date is incorrect. (Janus Aff., Ex. 2 to Defs.' 56.1.) Plaintiff provides no documentation to support his May 22 claim and does not dispute that the actual dates are the ones stated by Janus.

[2] Defendants have requested that the court substitute Thomas J. Dart, the current Sheriff of Cook County, for Sheahan, pursuant to Rule 25(d). That rule, however, applies only to actions where the officer is sued in his official capacity. FED. R. CIV. P. 25(d) (applies only to an "officer who is a party *in an official capacity*") (emphasis added). Although Plaintiff does not make clear in his complaint whether this is an individual or official capacity suit, he seeks $1 million in damages for violations of his constitutional rights, which can only be awarded in a personal capacity suit. Accordingly, since Plaintiff's *pro se* complaint should be liberally construed, *see Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006), the court treats this action as an individual capacity suit, and Sheahan remains a proper Defendant.

In his Complaint, Plaintiff alleges that a number of the living conditions at the jail violated his constitutional rights. First, Plaintiff complains that he was subjected to second-hand smoke while confined at the jail. (Defs.' 56.1 ¶ 3.) The Cook County Department of Corrections banned smoking on July 1, 2005, but Plaintiff contends that fellow prisoners flouted the rules, smoking contraband cigarettes, orange peels, and illegal drugs after the jail implemented the no-smoking policy.[3] (Pl.'s Dep. at 6-7, Ex. 1 to Defs.' 56.1 (hereinafter ("Pl.'s Dep."); Pl.'s Resp. at 1-2.) The smoke made it difficult for Plaintiff, who suffers from asthma and bronchitis, to breathe, and he alleges that his breathing was "heavy." (Pl.'s Dep. at 6, 11.) Plaintiff concedes, however, that he did not suffer an asthma attack while at the jail. (Defs.' 56.1 ¶ 3.) Plaintiff never complained about other inmates' alleged smoking violations, apparently because he feared reprisal from gang members. (Pl.'s Resp. at 2.)

Plaintiff next asserts that his housing unit was very cold. Plaintiff claims that he endured "below-freezing temperatures," causing him to become ill on August 29, 2005. (Defs.' 56.1 ¶ 4.) Even though it was summer[4], Plaintiff claims that it "probably was maybe five to ten degrees in the actual living area" and that he could see his breath. (Pl.'s Dep. at 9.) Plaintiff complained to correctional officers Baker, Moore, and Maggiore about the cold.[5] (Defs.' 56.1 ¶ 4.) Inmates

---

[3]   There is some confusion as to the length of time Plaintiff was exposed to environmental tobacco smoke. Although Plaintiff testified at his deposition that prisoners did not abide by the smoking ban, he alleged in his complaint that he suffered from second-hand smoke only until the Cook County Department of Corrections banned smoking on July 1, 2005, which would have predated his arrival at the jail. (Compl. at 6.) Since this would make his claim that he suffered adverse health effects from the smoke unintelligible, the court assumes it was a mistake and that his testimony at his deposition was accurate.

[4]   In fact, 2005 was an especially hot summer. *See* WGN Weather Center Blog, http://weblogs.wgntv.com/chicago-weather/tom-skilling-blog/2005/08/st-louis-sizzles-friday-with-t.html (last visited July 20, 2009)

[5]   In his response to Defendants' motion for summary judgment, Plaintiff claims for the first time that he also complained to Defendant Hall about the cold. Although, as discussed above, the court allows the *pro se* Plaintiff some leeway in his presentation of evidence, Plaintiff may not flatly contradict his deposition testimony in his response brief. "[P]arties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior
(continued...)

were promised blankets, but never received them. (Pl.'s Dep. at 18.)

Plaintiff next complains that the jail was excessively noisy. (Defs.' 56.1 ¶ 11.) In both his deposition and his response brief, Plaintiff detailed the "loud noise, banging on the doors, and rapping of music every night," with "guys screaming basically all night, and it makes it hard to sleep because . . . of the noise." (Pl.'s Resp. at 5; Pl.'s Dep. at 22.) Plaintiff claims that he got only two to three hours of sleep every night and often suffered from severe headaches as a result. (Pl.'s Resp. at 5.)

Plaintiff also identifies a number of unpleasant or dangerous conditions from which he conceded he suffered no physical injury:

- He contends that the jail was infested with rodents, cockroaches, gnats, and other flying insects. (Compl. at 6.) Plaintiff recalls mornings when he would find some fifty cockroaches crawling all over his belongings, and rats would sometimes crawl into his bed. (*Id.* at 8.) He acknowledged, however, that the bugs and rodents never bit or otherwise harmed him. (Defs.' 56.1 ¶ 5.)

- Plaintiff asserts that the light fixture in his cell posed a hazard, as exposed wires hung from it. (Compl. at 6; Pl.'s Dep. at 15.) Plaintiff was, however, able to change the bulb and was never shocked or cut by the light fixture. (Defs.' 56.1 ¶ 6.)

- Plaintiff also observed an air vent with a loose metal edge. (*Id.* ¶ 7.) According to Plaintiff, this condition was dangerous because an inmate could have used the metal to make a shank or weapon, although Plaintiff is unaware of anyone who actually did. (*Id.*)

- Whenever it rained or snowed, Plaintiff claims, water would seep through the walls and soak the floor of the day room. (Pl.'s Dep. at 20.) On one occasion, a plumbing problem in one of the cells flooded the tier for about three days. (*Id.* at 20-21.) The water did not seep into Plaintiff's own cell, however. (Defs.' 56.1 ¶ 8.)

- Plaintiff also alleges problems with the facility's ventilation and air circulation system. (*Id.* ¶ 9.) Plaintiff observed correctional officials, including Defendant Hall, work with the facility's engineers to try to fix the ventilation issues. (*Id.*) The windows in Plaintiff's living unit were secured so that they could not be opened. (Pl.'s Resp. at 1.)

- Plaintiff claims that he had to sleep on the floor for a month and a half due to overcrowding

---

⁵ (...continued)
depositions." *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005) (citing *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168-69 (7th Cir. 1996)).

in the jail.  (Defs.' 56.1 ¶ 10.)  Plaintiff slept on the same type of mattress as used on the bunk beds and was moved to a bunk as soon as one became available.[6]  (*Id.*)

- Inmates using the washrooms would urinate on the floor and spit in the sink.  (Pl.'s Dep. at 23.)  Plaintiff was provided with cleaning materials, including Ajax, a mop, and a broom, twice a day to clean the lavatories, between 2 and 3 p.m. and again between 9 and 10 p.m.  (Defs.' 56.1 ¶ 12.)

- Though Plaintiff understood that detainees were entitled to an hour of exercise per day, he contends he received only one hour of recreation time per week.  (Pl.'s Dep. at 24.)  While incarcerated at the jail, Plaintiff was still able to engage in physical activities such as lifting weights and playing ball.  ( Defs.' 56.1 ¶ 13.)

- Plaintiff was fed regularly, but breakfast and dinner were cold "90% of the time."  (Defs. 56.1 ¶ 19.)

Finally, Plaintiff makes several complaints of medical negligence.  First, Plaintiff was told that a fellow inmate on his tier had tuberculosis.[7]  (*Id.* ¶ 15.)  Plaintiff believes that the prisoner had not been screened properly and that breathing the same air as the infected inmate exposed Plaintiff to tuberculosis.  (*Id.*)  Plaintiff apparently did not contract the disease, however, and has never tested positive for tuberculosis.  (*Id.*)

Plaintiff also suffered from a hernia.  (*Id.* ¶ 16.)  Plaintiff informed Defendant Hall of the hernia and he twice met with a doctor.  (Pl.'s Dep. at 25.)  According to his response brief, Plaintiff's hernia was operated on immediately following his transfer to a jail in Wisconsin.  (Pl.'s Resp. at 6.)

Plaintiff also saw a physician in connection with rectal bleeding.  (Defs.' 56.1 ¶ 17.)  The doctor made a preliminary diagnosis of hemorrhoids and prescribed medication for it.  (*Id.*)  Plaintiff was scheduled for a colonoscopy to test for cancer, but the initial appointment was cancelled, and Plaintiff was transferred from the jail before the rescheduled colonoscopy could take place.  (*Id.*)

---

[6] In addition, Plaintiff claims in his response that the mattress was soaked by a leaking toilet or otherwise inferior to the mattresses other prisoners were provided.  The court ignores these claims because they contradict his own deposition testimony.

[7] Defendants do not object to the hearsay nature of Plaintiff's testimony.

Plaintiff has suffered from asthma all of his life. (Pl.'s Dep. at 12.) When he first arrived at the jail, Plaintiff alleges that he was denied his asthma medication for approximately twenty-five days. (Compl. at 6.) He finally received his asthma medication on or about September 16, 2005. (*Id.*) After the initial delay, Plaintiff had an inhaler to help regulate his breathing. (Defs.' 56.1 ¶ 18.) Plaintiff was allowed to keep his inhaler with him at all times and, as noted above, suffered no asthma attacks during his confinement at Cook County Jail. (*Id.*)

Plaintiff filed this action on July 26, 2006, alleging deprivations of his constitutional rights during his confinement at the Cook County Jail. Defendants initially moved for summary judgment on October 30, 2007, but failed to comply with Local Rule 56.2 and did not provide Plaintiff with the required Notice to Pro Se Litigants Opposing Summary Judgment. Defendants have now filed a renewed motion for summary judgment on November 24, 2008, and provided Defendant with the requisite 56.2 notice. The court now considers Defendants' motion.

## **DISCUSSION**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Lee v. Young,* 533 F.3d 505, 509 (7th Cir. 2008). Rule 56(c) requires that the court grant a motion for summary judgment if, after adequate time for discovery, "a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Johnson*

v. *Doughty*, 433 F.3d 1001, 1009-10 (7th Cir. 2006), citing *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003).

Plaintiff brought this suit under 42 U.S.C. § 1983, which authorizes suits against public officials for deprivations of rights secured by the United States Constitution. Plaintiff was confined in the Cook County Jail as a pretrial detainee, so the Eighth Amendment's prohibition on "cruel and unusual punishment" does not directly apply to him, as his confinement was not "punishment." *See Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007). Nevertheless, "[a]lthough the Eighth Amendment only applies to convicted prisoners, . . . the same standard applies to pretrial detainees under the Fourteenth Amendment's due process clause." *Id.* (citing *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003)).

Most of Plaintiff's claims concern his conditions of confinement. The Constitution's prohibition against punitive conditions imposes upon prison officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Turner v. Miller*, 301 F.3d 599, 603 (7th Cir. 2002). Correctional officials must ensure that inmates receive "adequate food, clothing, shelter, protection, and medical care." *Oliver v. Deen*, 77 F.3d 156, 159 (7th Cir. 1996). Proof of a conditions of confinement claim entails both an objective component and a subjective one. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001). To show that a deprivation is "objectively, sufficiently serious," the plaintiff must demonstrate that he was subjected to an "extreme deprivation[]." *Turner*, 301 F.3d at 603 (citing *Delaney*, 256 F.3d at 683). The subjective component requires the plaintiff to show that the defendants acted with "deliberate indifference," which entails, at "a minimum," that the defendants acted with "actual knowledge of impending harm easily preventable." *Turner*, 301 F.3d at 603 (citing *Delaney*, 256 F.3d at 683 (emphasis omitted)).

**I.     Prison Litigation Reform Act**

At the outset, the court notes that a number of Plaintiff's claims cannot clear an additional hurdle created by Congress in the Prison Litigation Reform Act ("PLRA"). The PLRA states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Recovery for mental and emotional injuries will be permitted only when accompanied by a claim of physical injury. Accordingly, a group of prisoners claiming mental and emotional injuries caused by exposure to asbestos could not bring an action against the prison officials when there was no showing of any physical injuries. *Zehner v. Trigg*, 133 F.3d 459, 460 (7th Cir. 1997).

While some of Plaintiff's claims do allege physical injury, many do not. First, Plaintiff's claim that he was exposed to tuberculosis but did not ever contract it does not allege any physical injury, and is barred just as the asbestos exposure claim was. *See id.* Similarly, Plaintiff suffered no physical harm by the mere existence of a loose piece of metal from which another inmate could make a weapon, where no such weapon was ever made, let alone used against Plaintiff. Nor can Plaintiff recover for a defective light fixture with exposed wires because he was never actually cut or shocked by that fixture. *Cf. Morissette v. Peters*, 45 F.3d 1119, 1123 (7th Cir. 1995).[8] Next, Plaintiff's claim of frequent encounters with rodents and cockroaches, however unpleasant, did not cause him any physical injury. *See Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008) (dismissing infestation claim where there was no allegation of "significant physical harm" (quoting *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996))). Plaintiff was also not physically harmed by the water in the day room, nor by the poor ventilation system. Likewise, Plaintiff did

---

[8] In *Morissette*, the court described an exposed wire that twice shocked the plaintiff as "a minor hazard that was easily avoided" and "an unpleasant inconvenience." *Id. Morissette* was decided before the PLRA went into effect, and confirms that no constitutional violation exists even when minor physical injury is caused by exposed wires.

8

not allege any physical injury from being assigned to sleep on the floor for several weeks; even if he did, such a requirement does not give rise to an arguable due process claim of punishment. *See Hines v. Sheahan*, 845 F. Supp. 1265, 1269 (N.D. Ill. 1994) (citing a number of district court cases for the conclusion that "requiring an inmate to sleep on a mattress on the floor does not in itself rise to the level of a constitutional violation").[9] Finally, Plaintiff's complaints about cold food state no physical injury. *Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994) ("complaints about cold and poorly-prepared food must" fail).

While the court does not doubt that all of these things were unpleasant, the "Constitution does not mandate that prisons be comfortable." *Thomas v. Ramos*, 130 F.3d 754, 763 (7th Cir. 1997) (citing *Caldwell v. Miller*, 790 F.2d 589, 601 (7th Cir. 1986)). Plaintiff has not disputed—and in many instances has admitted—that he suffered no physical injury as a result of enduring any of these conditions, and therefore none of these claims can form the basis for recovery under section 1983. *See* 42 U.S.C. § 1997e(e).

## II. Remaining Claims

Plaintiff's remaining claims at least potentially state a claim of physical injury.

### A. Second-Hand Smoke

Plaintiff claims that being subjected to second-hand smoke caused him to use his inhaler more often and caused him to suffer headaches, chest pain, sore throats, and irritated eyes. Subjection to second-hand smoke does not normally violate a prisoner's constitutional rights. Although the Constitution prohibits cruel and unusual punishment, "it does not require the most intelligent, progressive, humane, or efficacious prison administration." *Anderson v. Romero*, 72 F.3d 518, 524 (7th Cir. 1995). The question is not "whether it would [be] better or more

---

[9] Plaintiff notes, in addition, that sleeping on the floor transgresses published correctional standards, but violations of the Illinois County Jail Standards are not, in and of themselves, actionable as constitutional violations. *See, e.g.*, *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (section 1983 provides a remedy for constitutional violations, not violations of state statutes or regulations).

enlightened" to enforce the rights of non-smokers. *Oliver*, 77 F.3d at 160. Indeed,

> failing to provide a maximally safe environment, one completely free from pollution or safety hazards is not [a form of cruel and unusual punishment]. Many Americans live under conditions of exposure to various contaminants. The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans.

*Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001) (internal citations omitted). Neither annoyance and discomfort, nor the mere possibility of an increased risk of cancer or other smoke-related disease, amounts to a substantial risk of serious harm actionable under 42 U.S.C. § 1983. *See Goffman v. Gross*, 59 F.3d 668, 672 (7th Cir. 1995).

Defendants are entitled to summary judgment on this claim because Plaintiff cannot meet either the objective or subjective tests. The physical injuries Plaintiff complained of are similar to those of the plaintiff in *Henderson v. Sheahan*, 196 F.3d 839 (7th Cir. 1999). The court there concluded that injuries resulting from second-hand smoke—namely, "breathing problems, chest pains, dizziness, sinus problems, headaches and a loss of energy—are, objectively speaking, relatively minor." *Id.* at 846; *see also Oliver*, 77 F.3d at 159 (housing asthmatic prisoner with smoking cellmates does not meet objective component of Eighth Amendment violation). Nor has Plaintiff shown that any Defendant acted with deliberate indifference. A smoking ban went into effect prior to Plaintiff's being housed at the jail, and Plaintiff has not shown that Defendants were even aware that he was routinely being subjected to second-hand smoke; he admitted that he did not report the violations out of fear of retribution. Therefore, Defendants are entitled to summary judgment on this claim.

### B. Cold Temperatures

Plaintiff contends that he developed a serious cold that inhibited his eating and swallowing due to the extreme cold temperature in the jail. Prisoners have a constitutional right to adequate shelter, including a right to protection from cold. *See Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997). The credibility of Plaintiff's claim is suspect: he asserts that he became sick due to

below-freezing temperatures in the jail on August 29, a statement which cannot be literally true, given the amount of energy the air-conditioning units would need to expend to achieve such temperatures. Excusing Plaintiff's hyperbole, the gist of his claim—that the temperature in the jail was kept unreasonably low and he became sick as a result—remains.

Plaintiff's claim nevertheless fails because of the lack of any showing of deliberate indifference on the part of Defendants. Plaintiff claims that he told Officers Baker and Moore as well as Lieutenant Maggiore about the cold. The only allegation Plaintiff makes concerning any of the Defendants was that Superintendent Hall came around with some engineers in an attempt to fix the temperature problem. (Defs.' 56.1 ¶ 4.) Far from showing deliberate indifference, Hall's attentiveness to the problem shows prison officials' effort to remedy it. *Cf. Montano v. City of Chicago*, 535 F.3d 558, 571 (7th Cir. 2008) (internal report that discusses problems with the police departments' investigation of excessive-force claims does not show deliberate indifference, but rather an attempt to identify or fix the problem). Plaintiff has not shown that a genuine dispute exists regarding whether any Defendants were deliberately indifferent to the problem.

### C. Excessive Noise

Plaintiff claims that noise levels at the jail were so excessive that he could barely sleep at night, often getting only two to three hours of sleep, and that he suffered from serious headaches as a result. Defendant claims that this does not constitute physical injury within the meaning of the PLRA. Defendants provide no argument for this claim, and the court can think of no reason why sleep deprivation and headaches would not constitute physical injury; indeed, headaches have constituted physical injury sufficient to support a claim of excessive noise in other cases. *See Sanders v. Sheahan*, 198 F.3d 626, 628 (7th Cir. 1999); *Antonelli*, 81 F.3d at 1433. Defendants next argue that even if the injury is deemed a physical one, it was not "objectively, sufficiently serious." *Delaney*, 256 F.3d at 683. The Seventh Circuit, however, has held that claims of constant excessive noise like the kind Plaintiff alleges took place every night at the Cook

11

County Jail can indeed be objectively serious enough to state a constitutional violation. *Compare Antonelli*, 81 F.3d at 1433 (noise that "occurred every night, often all night, interrupting or preventing [plaintiff's] sleep" is objectively serious) *with Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994) (a few hours of periodic loud noises does not pose a serious risk of injury).

Finally, Defendants contend that Plaintiff has not shown deliberate indifference on the part of any of the Defendants. Plaintiff's claim, however, is essentially that the jail *systemically* permits excessive noise from the inmates, a condition which might support a claim against Defendants because one could conclude that supervisors are aware of the general conditions in the jail. *See Sanders*, 198 F.3d at 629 ("systemic conditions . . . can support a valid claim against" the sheriff and jail director in their personal capacities). With respect to excessive noise claims in particular, however, the Seventh Circuit held in *Sanders* that such claims are too localized to support a claim against the jail director and sheriff. *Id.*

The *Sanders* court did not foreclose all possibility that a claim that the noise constituted a systemic violation, as it allowed the Plaintiff to amend his complaint and identify unnamed defendants. Here, the court must decide whether there is enough evidence to support a claim against Ardell Hall, the superintendent of the Jail's Division 5, where Plaintiff was held.[10] The question on summary judgment is whether Plaintiff has produced enough evidence that a jury could return a verdict in his favor on this question. Plaintiff's only evidence consists of his testimony of the excessively loud conditions at night in his jail, causing sleep deprivation, headaches, and possibly other psychological side effects. Defendants did not present any evidence to dispute Plaintiff's allegations of noise, arguing instead that this evidence is insufficient to support a claim against Defendants. Drawing all reasonable inferences in favor of Plaintiff, as the court must, the court concludes that a genuine dispute exists as to whether Hall was

---

[10] The status of Defendant Shaughnessy is addressed below.

deliberately indifferent to the noise level in Division 5. If the conditions were indeed as severe as Petitioner alleges—and Defendants have offered no evidence to call his allegations into question—a jury could reasonably conclude that Hall knew of the intolerable noise levels and allowed them to persist. Defendant Hall is therefore not entitled to summary judgment on Plaintiff's claim of excessive noise.

### D.     Unclean Lavatories

Plaintiff claims that the unsanitary lavatories contributed to his often being sick while housed at the Cook County Jail. "The state must provide an inmate with a healthy, habitable environment." *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985) (internal quotation omitted). Here, Plaintiff's own deposition testimony dooms his claim regarding unsanitary washrooms. Although certain inmates were evidently careless and disrespectful of their shared space, Plaintiff admits that he was provided with cleaning materials, including Ajax, a mop, and a broom, twice a day to clean the lavatories. As Plaintiff had the option of cleaning the restrooms twice a day, he cannot show that the conditions were "objectively, sufficiently serious," let alone any deliberate indifference on the part of Defendants. *Delaney*, 256 F.3d at 683.

### E.     Inadequate Recreation Time

Plaintiff argues that his general health suffered due to his receiving as little as one hour of exercise per week. "[S]hort-term denials of exercise may be inevitable in the prison context and are not so detrimental as to constitute a constitutional deprivation." *Id.* at 683-84. A lack of exercise will violate the Constitution only "in extreme and prolonged situations where movement is denied to the point that the inmate's health is threatened." *Antonelli*, 81 F.3d at 1432. Limiting an inmate to one hour per week of out-of-cell exercise is not *per se* unconstitutional, *see Henderson v. Lane*, 979 F.2d 466, 469 (7th Cir. 1992), particularly where the inmate has freedom of movement and space within his unit or his cell to engage in exercise, even though he is denied access to a gym. *See, e.g.*, *Martinez v. Fairman*, No. 93 C 6225, 1995 WL 383072, at *5 (N.D.

Ill. June 22, 1995). There is a significant difference between a lack of outdoor recreation and an inability to exercise. Even an inmate confined to a segregation unit retains the ability to improvise an exercise regimen in his cell or unit.

In the case at bar, Plaintiff was, he says, allowed an average of an hour a week of recreation time. (Pl.'s Dep. at 24.) The court notes, however, that Plaintiff repeatedly referred to events in the day room during his deposition, which tends to suggest that he was not confined to a cell and did have the opportunity for some movement. Moreover, in discussing his hernia, Plaintiff guesses that he may have sustained the injury "either lifting weights or playing ball or something." (*Id.* at 26.) Plaintiff therefore appears to have had ample opportunity to exercise even if he did not have a formal hour of daily recreation. Plaintiff has failed to demonstrate that any limits on his exercise reached a constitutional magnitude.

**F.     Medical Care**

The Due Process Clause prohibits deliberate indifference to the serious medical needs of a pretrial detainee. *See Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008); *Chapman v. Keltner*, 241 F. 3d 842, 845 (7th Cir. 2001). As with general conditions claims, deliberate indifference in the medical context has both an objective and a subjective element. First, the medical condition must be objectively serious, meaning that it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (citation omitted). Additionally, the prisoner must show that the correctional official or health care provider must be subjectively aware of and consciously disregard the medical need. *See Chapman*, 241 F.3d at 845.

**1.     Asthma Inhaler**

Plaintiff claims that he was denied his asthma inhaler for several weeks after coming to the jail. Asthma, depending on its degree, may constitute a serious medical condition. *See Garvin*

14

*v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001). Plaintiff admits, however, that he never suffered an asthma attack while at the jail and that he received an inhaler within a few weeks of his arrival at the jail. Nothing in Plaintiff's statements suggests that his asthma was so severe that it was objectively serious, at least so as to cause difficulty for the few weeks he was without an inhaler. Furthermore, as he was soon provided with an inhaler, Plaintiff cannot show deliberate indifference on the part of Defendants towards his medical needs. Denial of Plaintiff's inhaler for three weeks therefore did not violate his constitutional rights.

### 2. Hernia

Plaintiff also cannot show deliberate indifference with respect to his hernia. Plaintiff acknowledged that when he informed Defendant Hall of his condition, Hall scheduled him for a physician's visit. (Pl.'s Dep. at 25-26.) Plaintiff saw a doctor "a couple of times" relating to the hernia. (*Id.*) Even assuming that Plaintiff's hernia was serious, Hall ensured that Plaintiff twice met with a doctor about the condition, which shows that he was not deliberately indifferent to Plaintiff's medical needs.

### 3. Hemorrhoids/Rectal Bleeding

Plaintiff also complained about rectal bleeding. He ultimately saw a physician, who prescribed medication for what he tentatively diagnosed as hemorrhoids. Hemorrhoids can potentially constitute a serious medical need. *See, e.g.*, *Jones v. Natesha*, 151 F. Supp. 2d 938, 944 (N.D. Ill. 2001) (condition was serious where doctors had to perform three surgeries within two years). In this case, however, even if Plaintiff's rectal bleeding was serious, there is no indication that Defendants acted with deliberate indifference to that condition. Plaintiff received medical attention and medication for hemorrhoids. Plaintiff complains that a scheduled colonoscopy to rule out cancer was cancelled, and that he was transferred out of the Cook County Jail before the rescheduled exam could take place. But nothing in the record suggests that Defendants, rather than the medical staff, ordered the rescheduling. Even if some Defendants were involved in the

decision to reschedule, nothing suggests that their decision was guided by deliberate indifference; in fact, the scheduling of a diagnostic procedure such as a colonoscopy suggests the opposite. Finally, Plaintiff does not claim that he actually had cancer, so even if the named Defendants *could* be held accountable for the failure to ensure that a colonoscopy was performed prior to his leaving the jail, the omission is immaterial because Plaintiff suffered no harm as a result of the lack of the diagnostic test.

### III. New Allegations Made in Plaintiff's Summary Judgment Brief

In response to Defendants' motion for summary judgment, Plaintiff makes new allegations, including a lack of security personnel, and exposure to radon. However, the summary judgment stage "is too late in the day to be adding new claims." *Auston v. Schubnell*, 116 F.3d 251, 255 (7th Cir.1997). The court will not consider Plaintiff's new claims.

### IV. Defendant Shaughnessy

Finally, the court notes a concern about the status of Defendant Shaughnessy. Despite repeated attempts, the United States Marshals Service has been unable to locate and serve Defendant Shaugnessy, who is no longer Inspector General of the Cook County Sheriff's Department. (*See* Summons Returned Unexecuted [53].) Unless Shaugnessy is properly served, the court has no jurisdiction over him.

In any event, based on Plaintiff's allegations, it appears that Shaughnessy cannot be held liable for Plaintiff's remaining claim. "[T]o be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (internal quotations omitted). As Inspector General of the Cook County Sheriff's Department, it is not clear that Shaughnessy had any direct responsibilities for the day-to-day operations of the jail. Even assuming that jail conditions were within Shaugnessy's bailiwick, there is no indication that Plaintiff ever contacted the Inspector General's Office or that Shaugnessy was otherwise aware of noise problems at the jail. Accordingly, Plaintiff is ordered

to show good cause in writing within twenty-one days why the complaint should not be dismissed as to Shaugnessy.

## **CONCLUSION**

Defendants' Motion for Summary Judgment [88] is denied as to Plaintiff's claim that Defendant Hall permitted an excessively noisy environment in Division 5 at the Cook County Jail, but otherwise granted in all respects. Plaintiff is directed to show cause in writing within fourteen (14) days why the complaint should not be dismissed as to Defendant Shaugnessy. This case is set for a telephone conference on Thursday, August 6, 2009, at 8:30 a.m., the call to be initiated by defense counsel. The parties are encourage to confer prior to that date regarding the possibility of settlement of Plaintiff's single remaining claim.

ENTER:

Dated: July 21, 2009  
_____  
REBECCA R. PALLMEYER  
United States District Judge